FILED
2021 MAR 1 PM 12:17
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MATHEW CLYDE,<br><br>  Plaintiff,<br><br>v.<br><br>MY BUDDY THE PLUMBER HEATING AND AIR, LLC, *et al.*,<br><br>  Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS MY BUDDY THE PLUMBER HEATING AND AIR, LLC AND BRANDON DUNCAN'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00756-JNP-CMR<br><br>District Judge Jill N. Parrish |

Before the court are two Motions for Summary Judgment. The first is filed by Defendants My Buddy the Plumber Heating and Air, LLC ("My Buddy") and Brandon Duncan ("Duncan") (collectively, the "My Buddy Defendants"). ECF No. 39. The second is filed by Plaintiff Mathew Clyde ("Clyde"). ECF No. 45.[1] The court entertained oral argument on both pending Motions on February 26, 2021. Having reviewed the memoranda and considered the oral argument, the court grants the My Buddy Defendants' Motion for Summary Judgment and denies Clyde's Motion for Partial Summary Judgment.

---

[1] Defendant G&A Partners – Utah, LLC ("G&A") filed a Notice of Joinder to the My Buddy Defendants' Opposition to Clyde's Motion for Partial Summary Judgment. ECF No. 55. However, because the court grants G&A's Motion for Summary Judgment (ECF No. 38), thereby dismissing G&A from this case, G&A's Notice of Joinder is moot.

# BACKGROUND

My Buddy is owned by Duncan and operates as a plumbing and HVAC company that services the general public. My Buddy provides its services directly to its customers, and it neither offers its services for resale nor manufactures any of the plumbing or HVAC parts and systems that it sells. Clyde was employed by My Buddy from November 2016 until April 2019.

As part of his employment with My Buddy, Clyde agreed to a deferred commission payment structure. Under this structure, Clyde was paid a commission of 40% of the net profits of each job that he sold, but his commission could not be determined and paid to him until the customer fully paid My Buddy for the services sold. Some customers promptly paid for their services in full, but others would take weeks or months to complete their payments to My Buddy. When customers' payments were delayed, so too were Clyde's commission payments. As a result, the commissions reflected on Clyde's paychecks rarely reflected the commissions that Clyde made during the same pay period. This delayed commission structure provided for substantial fluctuation in Clyde's bi-weekly earnings from My Buddy.

Clyde brings this lawsuit under the Fair Labor Standards Act ("FLSA"), seeking unpaid overtime wages from his employment with My Buddy. ECF No. 2. The My Buddy Defendants have filed a Motion for Summary Judgment, arguing that Clyde was an exempt employee under both the Retail/Service Establishment and the Outside Sales Exemptions and thus does not qualify to receive overtime pay. Clyde responds that neither exemption is applicable, and he specifically argues in his Motion for Partial Summary Judgment that the Outside Sales Exemption does not apply (ECF No. 45). The My Buddy Defendants also argue that Clyde was paid more than minimum wage for all his hours worked, and that during his on-call hours, Clyde was merely "waiting to be engaged," which does not constitute hours worked under the FLSA. Clyde responds

that he was not paid at least minimum wage for all the hours that he worked, and that he was "engaged to be waiting" while on-call, which counts as hours worked under the FLSA.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). "At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Rather, the court must "construe the evidence in the light most favorable to . . . the nonmoving party." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted).

## DISCUSSION

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. To achieve this end, the FLSA imposes a minimum wage and requires that an employee who works more than forty hours per week must be compensated for the excess hours "at a rate not less than one and one-half times the regulate rate at which he is employed." *Id.*

3

§§ 206, 207(a)(1). However, there are several exemptions to the minimum wage and maximum hour requirements. Relevant here is the Retail/Service Establishment Exemption (the "Retail Exemption"). *Id.* § 207(i). The My Buddy Defendants argue that Clyde's claim of unpaid overtime wages fails under the Retail Exemption.[2]

An employer must prove the applicability of an FLSA exemption by a preponderance of the evidence. *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1157–58 (10th Cir. 2012). "[E]xemptions under the FLSA are to be narrowly construed against the employers seeking to assert them . . . ." *Id.* at 1157 (citation omitted). "The inquiry into exempt status . . . remains intensely fact bound and case specific." *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008) (citations omitted). "The question of how [an employee] spent [his] working time . . . is a question of fact. The question whether [his] particular activities excluded [him] from the overtime benefits of the FLSA is a question of law . . . ." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *see also Reich v. Wyoming*, 993 F.2d 739, 741 (10th Cir. 1993).

Under the Retail Exemption, an employer is not liable to an employee for unpaid overtime wages upon the satisfaction of the following three conditions: (1) the employee is employed by a

---

[2] The parties also argue over the applicability of the Outside Sales Exemption, 29 U.S.C. § 213(a)(1). Because the court finds that the Retail Exemption applies to this case, the court need not decide the applicability of the Outside Sales Exemption.

Similarly, although the My Buddy Defendants raise alternative arguments in their Motion for Summary Judgment that Clyde was paid more than minimum wage for all his hours worked and that Clyde's on-call hours should not be compensable as hours worked because he was "waiting to be engaged," the court need not address these arguments because it finds that the Retail Exemption applies.

Nevertheless, the court notes that the applicability of the Outside Sales Exemption and the compensability of Clyde's on-call hours in particular were well-briefed. The court is persuaded that they provide alternate bases in the record for its ruling.

"retail or service establishment"; (2) the employee's "regular rate of pay . . . is in excess of one and one-half times" the federal minimum wage; and (3) "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). Regulations promulgated by the Department of Labor interpreting this statute[3] state that the purpose of Section 207(i) is "to relieve an employer from the obligation of paying overtime compensation to certain employees of a retail or service establishment paid wholly or in greater part on the basis of commissions." 29 C.F.R. § 779.414.

The satisfaction of the first and third elements of the Retail Exemption is not disputed by the parties; it is uncontroverted that My Buddy is a retail or service establishment and that more than half of Clyde's compensation from My Buddy represents commissions on goods or services. But the second element—whether Clyde's regular rate of pay exceeds one and one-half times the federal minimum wage—is disputed. Accordingly, the court will only address the second element of the Retail Exemption.

I.      **"Regular Rate of Pay" Standard**

"Determination of correct overtime compensation under the [FLSA] depends upon the 'regular rate' at which the employee is employed, reduced to an hourly figure." *Triple "AAA" Co. v. Wirtz*, 378 F.2d 884, 886 (10th Cir. 1967) (citation omitted). After the United States Supreme Court defined "regular rate" as "the hourly rate actually paid the employee for the normal, non-

---

[3] "Generally, [Department of Labor] regulations are entitled to judicial deference and are the primary source of guidance for determining the scope and extent of exemptions to the FLSA." *Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996) (citing *Udall v. Tallman*, 380 U.S. 1, 16 (1965) ("When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.")); *see also Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir. 2008) (same).

5

overtime workweek for which he is employed," *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (citation omitted), Congress amended the FLSA to define "regular rate" to "include all remuneration for employment paid to, or on behalf of, the employee," except for eight statutory exceptions, 29 U.S.C. § 207(e), and the Department of Labor incorporated the Supreme Court's definition into its regulations, 29 C.F.R. § 778.108. To calculate the regular rate of pay, "[i]t is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate." *Id.* § 779.419(b) (citation omitted). Put differently, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Id.* § 778.109. Commissions, "whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula" are part of this calculation:

> This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. . . . The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate.

*Id.* § 778.117.

A "single workweek" is the relevant time period for regular rate calculations; "averaging of hours over [two] or more weeks" is not permitted. *Id.* § 778.104. This time period limitation applies to "employees paid on a commission basis." *Id.* However, "[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the

6

amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted." *Id.* § 778.120. One alternative method that "may be used" entails allocating equal commission amounts to each week by "[a]ssum[ing] that the employee earned an equal amount of commission in each week of the commission computation period and comput[ing] any additional overtime compensation due on this amount." *Id.* § 778.120, (a). Regardless of the calculation method used, if the employee's regular rate of pay "is not more than one and one-half times [the federal minimum wage], there is no overtime pay exemption for the employee in that particular workweek." *Id.* § 779.419(a).

## II.     Clyde's Regular Rate of Pay

Clyde was employed by My Buddy from November 2016 to April 2019. He was paid on a deferred commission basis, in which he made 40% of the net profits of each job that he sold, but only once customers paid My Buddy in full for its services. This meant that Clyde's commissions were typically delayed for weeks or months at a time, and his bi-weekly earnings accordingly fluctuated greatly. During Clyde's employment, the federal minimum wage was $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). Thus, to satisfy the second element of the Retail Exemption, the My Buddy Defendants must establish that Clyde's regular rate of pay was more than $10.88 per hour, one and one-half times the federal minimum wage.

Neither party has provided, and the court did not find, binding authority on how Clyde's regular rate of pay must be calculated given his deferred commission payment structure. But the court is persuaded by the calculation method used in *Schwind v. EW & Associates, Inc.*, 371 F. Supp. 2d 560 (S.D.N.Y. 2005), which bears substantial factual similarity to this case. In *Schwind*, an employee was paid solely on a deferred commission basis in which he "would be paid only after [his employer was] paid by the client for a particular project." *Id.* at 568 n.6. Because of this

pay structure, the court "deem[ed] it necessary to adopt a 'reasonable and equitable' method other than those provided in the regulation" to calculate the employee's regular rate of pay. *Id.* at 568. The "reasonable and equitable method" adopted was "to average the commissions received by [the employee] in a given year and allocate the average to each week." *Id.* In justifying its calculation method, the court focused on the employee's "fluctuating and irregular" deferred commission payment structure and observed that commission salesmen "have fluctuating hours and income, and it is unlikely that Congress meant to require employers to pay overtime in the lean weeks when the fat weeks more than make up." *Id.* (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986)). The court also noted that other courts had used periods as long as a year to calculate average wages. *Id.* (citation omitted); *see also Triple "AAA" Co.*, 378 F.2d at 887. Although neither party in *Schwind* provided the court with the number of hours that the employee worked, the court still found that the Retail Exemption applied because the employee's regular rate of pay, calculated based on a yearly average of his commissions that was equally allocated to each week, was in excess of the minimum hourly rate applicable to him "even if [he] worked every hour of every week." 371 F. Supp. 2d at 568 n.8, 568.

The My Buddy Defendants argue that Clyde's regular rate of pay should be calculated using the *Schwind* court's approach. Like the employee in *Schwind*, Clyde was paid on a deferred commission structure, which resulted in his pay substantially fluctuating throughout his employment. Because of these fluctuations, the My Buddy Defendants argue that allocating Clyde's deferred commissions to the corresponding hours and weeks he worked is "not possible or practicable." ECF No. 39 at 24. Thus, the most reasonable and equitable approach to calculating Clyde's regular rate of pay "is to divide the number of hours Mr. Clyde purportedly worked during

8

each workweek into the weekly average of his commissions for that year." *Id.* at 25. When this method is adopted, the My Buddy Defendants argue that the calculations are as follows:

> Mr. Clyde earned $22,214.71 in 2016 when he worked 9 weeks, for an average weekly salary of $2,468.30; $251,713.45 in 2017 when he worked 51 weeks, for an average weekly salary of $4,935.56; $190,961.33 in 2018 when he worked 52 weeks, for an average weekly salary of $3,672.33; and $30,190.02 in 2019 when he worked 15 weeks, for an average weekly salary of $2,012.67. When Mr. Clyde's regular rate is calculated using this method, it is clear that his regular rate of pay exceeded $10.88 per hour for each workweek he was employed by My Buddy.

*Id.* The My Buddy Defendants expand upon these calculations in an exhibit attached to their Motion for Summary Judgment (ECF No. 42-5) and in their Reply Brief (ECF No. 62 at 11–19). The My Buddy Defendants argue that these more detailed calculations clearly demonstrate that Clyde's regular rate of pay exceeded $10.88 per hour for each workweek of his My Buddy employment, even if he worked every hour of the workweek, just as the employee in *Schwind*. Thus, the My Buddy Defendants argue that the second Retail Exemption element is satisfied, rendering Clyde exempt from overtime pay.

In response, Clyde does not challenge the accuracy of the My Buddy Defendants' calculations. Rather, Clyde argues that his regular rate of pay must be calculated on a weekly basis, rather than on an average basis. Clyde further argues, without citation to any binding authority, that it is "impossible" and there is "no way" for the My Buddy Defendants to calculate Clyde's regular rate of pay because they failed to keep records of the number of hours that Clyde worked. ECF No. 56 at 22–23. Clyde argues that this failure to comply with FLSA record-keeping requirements bars them from invoking the Retail Exemption.

The court is not persuaded by Clyde's arguments. First, as previously stated, though the applicable regulations provide that an employee's regular rate of pay should be calculated on a

9

weekly basis and that averaging multiple weeks is not permitted, 29 C.F.R. § 778.104, the same regulations also state that equal commission amounts may be allocated to each week when "it is not possible or practicable to allocate the commission among the workweeks," *id.* § 778.120, (a). Because the court finds that it is not "possible or practicable" to accurately allocate Clyde's commission per workweek given the deferred commission basis on which he was paid, averaging his yearly commission and applying it equally to each week is a "reasonable and equitable method" by which to assess his regular rate of pay. *See Schwind*, 371 F. Supp. 2d at 568 (finding the same). *Contra Selz v. Investools, Inc.*, No. 2:09-cv-1042, 2011 WL 285801, at *10 (D. Utah Jan. 27, 2011) (unpublished) (distinguishing *Schwind* and declining to adopt its regular rate of pay calculation method because it was possible to make a week-by-week determination of the employee's regular rate of pay).

Second, the fact that the My Buddy Defendants failed to keep records of Clyde's hours worked does not bar them from invoking the Retail Exemption. It is undisputed that the My Buddy Defendants did not comply with the recordkeeping requirements set forth in the regulations interpreting the FLSA.[4] But this failure to do so does "not result in a finding that the retail-service

---

[4] The regulations interpreting the FLSA provide that:
> [w]ith respect to each employee of a retail or service establishment exempt from the overtime pay requirements of the Act pursuant to the provisions of section 7(i), employers shall maintain and preserve payroll and other records containing all the information and data required by § 516.2(a) except paragraphs (a) (6), (8), (9), and (11), and in addition:
>
> (a) A symbol, letter or other notation placed on the payroll records identifying each employee who is paid pursuant to section 7(i).
>
> (b) A copy of the agreement or understanding under which section 7(i) is utilized or, if such agreement or understanding is not in

exemption is inapplicable," nor does it "result in a denial of summary judgment if the [plaintiff] qualif[ies] for the retail service exemption in all other respects." *Viciedo v. New Horizons Comput. Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 899, 900 n.10 (S.D. Ohio 2003); *see also Kuntsmann v. Aaron Rents, Inc.*, 903 F. Supp. 2d 1258, 1268 (N.D. Ala. 2012) (holding that, although an employer failed to maintain records in compliance with 29 C.F.R. § 516.16, the employee's own testimony about how many hours that he worked, coupled with a record of the employee's compensation, satisfied the second element of the Retail Exemption). "Rather, . . . the [c]ourt should simply issue an injunction requiring the employer to comply with those requirements in the future." *Viciedo*, 246 F. Supp. 2d at 900 (citations omitted); *see also Brennan v. Valley Towing Co.*, 515 F.2d 100, 111–12 (9th Cir. 1975) (finding that even though an employer failed to comply with the record-keeping requirements of 29 C.F.R. § 516.2, "[n]o additional sanction for past record keeping violations [beyond an order requiring prospective compliance] seems warranted, unless . . . there is no reasonably accurate means of determining from the records available . . . what overtime pay is due each employee").

In addition, as Clyde's counsel conceded at oral argument, the regulations themselves do not make clear that a failure to comply with the recordkeeping requirements bars an employer from

---

> writing, a memorandum summarizing its terms including the basis of compensation, the applicable representative period and the date the agreement was entered into and how long it remains in effect. Such agreements or understandings, or summaries may be individually or collectively drawn up.
>
> (c) Total compensation paid to each employee each pay period (showing separately the amount of commissions and the amount of noncommission straight-time earnings).

29 C.F.R. § 516.16.

invoking the Retail Exemption. An employer's failure to comply with the regulations' recordkeeping requirements may give rise to an evidentiary problem for the employer because the employer will be unable to establish the number of hours worked and consequently the applicability of the exemption. But the My Buddy Defendants do not face this evidentiary problem here for two reasons.

First, although the My Buddy Defendants failed to create and maintain the required records, Clyde himself has provided detailed records of his hours worked and commissions received. *Contra Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 445–46 (N.D.N.Y. 2014) (holding that an employer could not establish that members of two employee subclasses received compensation greater than one and one-half times the minimum wage for all weeks that they worked because there was no record of the employees' actual weekly hours). Although it is the employer's burden to prove each element of an FLSA exemption, the My Buddy Defendants accept the accuracy of Clyde's records for purposes of this Motion for Summary Judgment, ECF Nos. 39 at 25 n.108, 62 at 6, so there is no dispute as to the number of hours that Clyde worked. Thus, the court can rely on the records proffered by Clyde in deciding this Motion. *See Viciedo*, 246 F. Supp. 2d at 900 n.9 (noting that if the plaintiffs prove that they are entitled to overtime wages, "the Defendant's failure to retain the required records will mean that the [c]ourt can rely on the employees' testimony to determine the number of hours for which back wages are owed" (citation omitted)). Based upon Clyde's records and the My Buddy Defendants' undisputed calculations, the court finds that the My Buddy Defendants have satisfied the second element of the Retail Exemption because it is evident that Clyde was paid more than $10.88 per hour for each workweek that he was employed by My Buddy.

12

Second, even without referencing Clyde's records of the number of hours that he worked, the court finds that the second Retail Exemption element is still satisfied. The court takes judicial notice[5] of the fact that there are 24 hours in a day and 365 days in a year, the product of which yields a maximum of 8,760 possible hours that could be worked by an individual employee in a year. If an employee were to work all of those hours at a rate of $10.88, or one and one-half times the federal minimum wage, that employee would make $95,308.80 per year. At oral argument, both parties agreed that Clyde was paid more than $95,308.80 per year for each of the years that he was employed by My Buddy. The My Buddy Defendants' calculations of Clyde's weekly regular rate of pay based on the assumption that he worked every hour of every day of his My Buddy employment confirm the same. *See* ECF No. 62 at 15–19. Thus, even if the court, just as the *Schwind* court, did not have any record of the number of hours that Clyde worked during his My Buddy employment, the My Buddy Defendants would still have satisfied the second Retail Exemption element because Clyde's regular rate of pay exceeded one and one-half times the federal minimum wage even if he worked every hour of every day. *See Schwind*, 371 F. Supp. 2d at 568 n.8, 568. At oral argument, counsel for Clyde conceded that Clyde would not prevail if this calculation method were used.

In sum, the court finds that Clyde's regular rate of pay during the course of his employment with the My Buddy Defendants exceeded one and one-half times the federal minimum wage, thereby satisfying the second element of the Retail Exemption. Although the My Buddy Defendants failed to keep a record of the number of hours that Clyde worked, Clyde provided his

---

[5] Under Federal Rule of Evidence 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).

own record of his hours and commissions, and the My Buddy Defendants do not dispute these records for purposes of this Motion for Summary Judgment. Clyde cannot rely on these records to establish that he was not paid the overtime wages he is seeking, and then bar the My Buddy Defendants from relying on the same records to establish the applicability of the exemption. Taking these undisputed records, averaging Clyde's deferred commission payments, and allocating the payments equally among the weeks he worked, it is undisputed that Clyde's wages exceeded the $10.88 hourly payment threshold required for the Retail Exemption. Because this satisfies the only disputed element of the Retail Exemption, the exemption applies, and the My Buddy Defendants do not owe Clyde overtime wages. The court reaches the same conclusion even if Clyde's records were not used and it instead assumed that he worked every hour of every day of his My Buddy employment. Because the Retail Exemption is applicable, Clyde's Partial Motion for Summary Judgment seeking to establish that the Outside Salesmen Exemption does not apply is moot. The same is true for all other alternative arguments that the My Buddy Defendants raised in their Motion for Summary Judgment.

## CONCLUSION AND ORDER

For the forgoing reasons, IT IS HEREBY ORDERED that the My Buddy Defendants' Motion for Summary Judgment (ECF No. 39) is GRANTED, and Clyde's Motion for Partial Summary Judgment (ECF No. 45) is DENIED. Additionally, the My Buddy Defendants are ordered to prospectively comply with FLSA record-keeping requirements.

DATED March 1, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge